IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ROSALYN YALOW CHARTER SCHOOL, <br><br> Defendant. | CIVIL ACTION NO.: <br><br> **COMPLAINT** <br><br> **JURY DEMAND** <br> **ENDORSED HEREON** |

Plaintiff Philadelphia Indemnity Insurance Company by and through its undersigned counsel, CLARK & FOX, hereby demands judgment against Defendant, and complains against it as follows:

## PARTIES

1.      Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 231 St. Asaph's Road, Suite 100, Bala Cynwyd, PA 19004-0950.

2.      At all times relevant hereto, PIIC provided liability insurance to Walker Memorial Baptist Church, Inc. ("Walker Memorial" or "Subrogor") in connection with its property located at 116 East 169th Street, Bronx, New York 12550 ("subject property"), under a policy of insurance that was in full force and effect at all relevant times.

3.      At all such relevant times, Defendant Rosalyn Yalow Charter School ("Rosalyn Yalow") was a for-profit educational institution organized and existing under the laws of the State of New York with its principal place of business located at 650 Grand Concourse, Bronx, New York 12550.

4.      In the wake of the incident described below, as a result of a claim made on said policy (which was duly paid), PIIC became subrogated to certain recovery rights and interests of Walker Memorial, including the claims giving rise to the within cause of action.

## JURISDICTION AND VENUE

5.      Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states.   Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

6.      Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

7.      At all relevant times prior to May 8, 2017, Walker Memorial owned the subject property.

8.      At all relevant times prior to May 8, 2017, Rosalyn Yalow leased the subject property pursuant to a written lease agreement ("Lease") with Walker Memorial.  A copy of the Lease is attached hereto as **Exhibit "A."**

9.      Pursuant to the Lease, Rosalyn Yalow agreed, except to the extent of Walker's Memorial's negligence or willful misconduct, to indemnify and hold harmless Walker Memorial "from and against all liabilities, obligations, claims, . . . causes of action, costs and expenses . . . imposed upon or incurred by or asserted against [Walker Memorial] . . . by reason of occurrence or existence of . . . any accident, injury to or death of persons (including workers) . . . occurring, or claimed to have occurred, on or about the [subject property][.]"  *See* Exhibit A, Lease, ¶ 14.

10.      Pursuant to the Lease, Rosalyn Yalow also agreed to name Walker Memorial as an additional insured on its liability insurance policy and that such coverage would be primary to

Walker Memorial's liability insurance coverage. *See* Exhibit A, Lease, ¶ 13.

11.     On May 8, 2017, Mr. Curtis Nash, an employee of Rosalyn Yalow, was legally and lawfully on the subject property in a room in the subject property that was wet due to a leaking ceiling.

12.     Rosalyn Yalow was notified about the dangerous condition of the floor.

13.     At all relevant times, Rosalyn Yalow employed its own custodial staff at the subject property that was authorized and able to redress the dangerous condition of the floor.

14.     Despite notice of the issue and sufficient time to redress it, Rosalyn Yalow failed to redress the dangerous condition of the floor identified by Mr. Nash.

15.     On May 8, 2017, Mr. Nash returned to the room, slipped and fell on the floor because of its dangerous condition, causing serious injuries.

16.     On September 25, 2017, Mr. Nash filed a Complaint against, among others, Walker Memorial, seeking recovery for his injuries: <u>Curtis Nash v. Walker Memorial Baptist Church, Inc. and Rosalyn Yalow Charter School</u>, Supreme Court of the State of New York, County of Bronx, Index No. 28989/2017E.

17.     Pursuant to the Lease agreement, Walker Memorial was covered as an additional insured under Rosalyn Yalow's policy with its liability carriers, Travelers and Munich Re.  PIIC's liability coverage to Walker Memorial was excess of the coverage from Travelers.

18.     Mr. Nash settled his claims against Walker Memorial at a November 23, 2021 Mediation for $1,750,000.00.  Of such settlement, Travelers paid the extent of its policy limits, $1,000,000.00 and PIIC paid $750,000.00.

19.     By virtue of the $750,000.00 payment made to Mr. Nash on its insured's behalf, PIIC became subrogated to the rights of Walker Memorial to the extent of such payment.

20.     Prior to the Mediation, Walker Memorial had asserted a third-party complaint against Rosalyn Yalow bringing claims for, among others, contractual indemnity pursuant to the terms of the Lease described above.

21.     At the time of the Mediation, Rosalyn Yalow, via its attorneys and insurers, knew of Walker Memorial's contractual indemnification claim filed against it and knew that payment by PIIC on Walker Memorial's behalf to settle Mr. Nash's claims would give PIIC subrogation rights to such claim.

22.     Nonetheless, shortly after the Mediation, and even though there was no discussion during the Mediation of resolving Walker Memorial's third-party contractual indemnification claim against Rosalyn Yalow, counsel for Rosalyn Yalow and its excess liability carrier emailed defense counsel for Walker Memorial asking him to confirm the settlement resolved all third-party claims.

23.     Counsel for Rosalyn Yalow and its excess liability carrier did not include separate counsel for PIIC who attended the Mediation on such email, nor any representative of PIIC, despite PIIC's subrogation interest in Walker Memorial's third-party claim.

24.     Walker Memorial's defense counsel, without consulting PIIC and without prior authorization from PIIC, responded that he "will make sure that the paperwork encompasses all claims."

25.     The Supreme Court of the State of New York, County of Bronx ruled that such email response from Walker Memorial's defense counsel constituted an enforceable settlement agreement dismissing Walker Memorial's third-party contractual indemnity claim against Rosalyn Yalow.[1]

---

[1] On July 8, 2022, Walker Memorial has filed a Notice of Appeal with respect to the decision.

26.     The Supreme Court of the State of New York, County of Bronx, however, did not rule on whether the settlement agreement extinguished PIIC's subrogation interest in the claim (or its separate subrogation claim) for contractual indemnity.

27.     Even if Walker Memorial released Rosalyn Yalow after the Mediation, such release would not preclude PIIC's subrogation claim here, as Rosalyn Yalow was aware of the subrogation claim at the time.  *Silinsky v. State-Wide Ins. Co.*, 30 A.D.2d 1, 3–4, 289 N.Y.S.2d 541, 545 (1968) ("The authorities are in agreement that a release given to a tortfeasor who has knowledge of the insurer's [subrogation] rights will not preclude the insurer from enforcing its right of subrogation against the wrongdoer."); *Grp. Health, Inc. v. Mid-Hudson Cablevision, Inc.*, 58 A.D.3d 1029, 1030, 871 N.Y.S.2d 780, 781–82 (2009) ("if the tortfeasor's settlement occurred after it had learned of the subrogation right, but without the insurance company's consent, the settlement will not destroy the insurance company's right to proceed in a subrogation action against the tortfeasor.").

## COUNT I – CONTRACTUAL INDEMNITY

28.     Pursuant to the Lease, Rosalyn Yalow agreed to indemnify and hold harmless Walker Memorial "from and against all liabilities, obligations, claims, . . . causes of action, costs and expenses . . . imposed upon or incurred by or asserted against [Walker Memorial] . . . by reason of occurrence or existence of . . . any accident, injury to or death of persons (including workers) . . . occurring, or claimed to have occurred, on or about the [subject property][.]"  *See* Exhibit A, Lease, ¶ 14.

29.     The action filed by Mr. Nash was a claim asserted against Walker Memorial involving an accident and injury to a person that occurred on the subject property.

30.     Therefore, Rosalyn Yalow was and is required to indemnify Walker Memorial for

such claim.

31.     Despite being duly notified of its indemnification obligation, Rosalyn Yalow did not indemnify Walker Memorial for the claim asserted by Mr. Nash and in no way contributed to the settlement of Mr. Nash's claims against Walker Memorial.

32.     Rosalyn Yalow's past and present failure to indemnify Walker Memorial breached the Lease.

33.     As a result of Rosalyn Yalow's breach of the Lease, PIIC was forced to pay Mr. Nash $750,000.00 in resolution of his claims against Walker Memorial, and was then subrogated to Walker Memorial's claim.

34.     Plaintiff and Plaintiff's insured has/had/have performed all conditions precedent to recover based upon such breach(es).

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in the amount of $750,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

Dated:  New York, New York
        August 25, 2022

                                        **CLARK & FOX**

                                        *Megan K. Foster*

                                        Megan K. Foster, Esq. (MF0554)
                                        54 West 40th Street, 7th Floor
                                        New York, NY 10018
                                        Phone:  (646) 506-4707
                                        Fax:  (646) 506-3777
                                        Email:  mfoster@clarkfoxlaw.com
                                        Attorneys for Plaintiff,
                                        Philadelphia Indemnity Insurance Company

# EXHIBIT A

**LEASE**

dated April 30, 2015

between

Walker Memorial Baptist Church,

as Lessor4

and

Rosalyn Yalow Charter School,

as Lessee

Affecting premises commonly known as 116 East 169th Street, in The City of New York, New York.

1 — Demised Premises and Lease Term
2 -- Rent
3 -- No Counterclaim or Abatement
4 -- Use of Demised Premises
5 — Condition of Demised Premises
6 — Maintenance and Repair
7 -- Alterations and Additions
8 -- Impositions
9 -- Compliance with Requirements
10 -- Liens
11 -- Permitted Contests
12 -- Utility Services
13 -- Insurance
14 -- Indemnification by Lessee and Lessor
15 — Damage or Destruction
16 — Taking of the Demised Premises
17 -- Quiet Enjoyment
18 — Right to Cure Lessee's Default
19 — Events of Default and Termination
20 — Repossession
21 -- Reletting
22 -- Assignment of Subrents
23 -- Lessee's Equipment
24 -- Security Deposit
25 — Survival of Obligations; Damages
26 -- Injunction
27 -- Waivers
28 — Lessor's Remedies Cumulative
29 -- Assignment and Subletting
30 -- Subordination and Attornment
31 -- Entry by Lessor
32 -- Conveyance by Lessor
33 -- No Merger of Title
34 — Acceptance of Surrender
35 -- End of Lease Term
36 — Brokerage
37 -- Definitions
38 -- Notices
39 — The Pastor's Study
40 -- Miscellaneous

## LEASE

**LEASE**, dated as of April 30, 2015, between Walker Memorial Baptist Church, a New York Religious Corporation, having an address at 120 East 169th Street, Bronx, New York 10452 ("Lessor"), and Rosalyn Yalow Charter School, a New York non-stock Education Corporation, having an address at 116 East 169th Street, Bronx, New York 10452 ("Lessee").

### 1.     The Demised Premises and Lease Term

In consideration of the Rent hereinafter reserved and the terms, covenants and conditions set forth in this Lease to be observed and performed by Lessee, Lessor hereby demises and leases to Lessee, and Lessee hereby rents and takes from Lessor, the following property (collectively hereinafter referred to as the "Demised Premises"): (a) all the land (the "Land") designated as Block 02466, Lot 11, formerly lots 11, 16, and 17; (b) all buildings, structures and other improvements (the "Improvements") now or hereafter located on the Land, other than Lessee's Equipment (as hereinafter defined) and excluding a certain gymnasium structure depicted on Exhibit A attached hereto (the "Gym"); and (c) all rights of way or of use, servitudes, licenses, tenements, appurtenances and easements now or hereafter belonging or pertaining to any of the foregoing; **TO HAVE AND TO HOLD** the Demised Premises unto Lessee, and the permitted successors and assigns of Lessee, upon and subject to all of the terms, covenants and conditions herein contained, for a term (the "Lease Term") of three (3) years, commencing on July 1, 2015 and expiring on June 30, 2018, unless the Lease Term shall sooner terminate pursuant to any of the conditional limitations or other provisions of this Lease.

Located on the Land and Included within the Demised Premises is a parking lot for the sole use of Lessee's employees, invitees, guests, students and parent's of students except as provided below. The Lessee shall not be entitled to charge anyone to park in said lot, and six (6) parking spaces shall be reserved for the use of the Lessor at no charge. Such spaces shall be designated from time to time by Lessee by giving Lessor at least five (5) days prior notice. Additional, Lessor may utilize the entire parking lot on Saturday's after 4 p.m. and on Sunday's.

Also included within the Demised premises is an area commonly known as the "cafetorium". This space is for the use by Lessee, however, Lessor may use this space no more than five (5) times in any calendar month and only when the Lessee's school is not in session and provided that Lessor shall give Lessee at least fourteen (14) days' prior notice of any such use. The parties have viewed this area together and understand where it is located. After each use of the cafetorium and prior to the next school day, Lessor shall cause such space to be cleaned and otherwise left in the condition that existed prior to such use. Lessor and Lessee shall exchange calendars on a monthly basis so as to coordinate use of the cafetorium in excess of the time periods set forth above, and Lessee shall have the right to grant Lessor such additi use time in its reasonable discretion. Lessor shall provide appropriate security in the building at all times during its use thereof.

Specifically EXCLUDED from the Demised Premises is the Gym, which is intended to be demolished by the Lessor at no expense to the Lessee as more fully set forth below.

## 2.    Rent

Lessee covenants to pay to Lessor as minimum rent (the "Fixed Rent") during the Lease Term $550,000.00 per annum for the portion of the Lease Term which precedes July 1, 2016, and $700,000.00 per annum from July 1, 2016 until July 1, 2017, and $900,000.00 per annum from July 1, 2017 through the remainder of the Lease Term.

The Fixed Rent shall be payable in advance in equal monthly installments on the first day of each calendar month. If the Lease Term does not commence on the first day of a month, the Fixed Rent for the month in which the Lease Term commences shall be appropriately apportioned. Each date on which Fixed Rent is payable hereunder is hereinafter referred to as a "Rent Payment Date".

Lessee also covenants to pay, from time to time as provided in this Lease, as Additional Rent all other amounts and obligations which Lessee assumes or agrees to pay under this Lease; interest at the rate of six percent per annum on such of the foregoing amounts and obligations as are payable to Lessor and are not paid within ten days after the due date (or, if a demand therefor is required by the terms of this Lease, within ten days after such demand), from the due date or such demand, as the case may be, until the payment thereof; and interest at the rate of six percent per annum on all installments of Fixed Rent not paid within three (3) days of the due date, from the due date until paid. If Lessee fails to pay any such Additional Rent, Lessor shall have all the rights, powers and remedies provided for in this Lease or at law or in equity or otherwise in the case of nonpayment of rent.

All Fixed Rent and Additional Rent (collectively hereinafter referred to as "Rent") shall be paid in such coin or currency (or, subject to collection, by good check payable in such coin or currency) of the United States of America as at the time shall be legal tender for the payment of public and private debts, at the office of Lessor as set forth above, or at such place and to such person as Lessor from time to time may designate in writing.

## 3.    No Counterclaim or Abatement

All Rent shall be paid to Lessor without notice, demand, counterclaim, setoff, deduction or defense, and nothing shall suspend, defer, diminish, abate or reduce any Rent, except as otherwise specifically provided in this Lease.

The obligations and liabilities of Lessee hereunder in no way shall be released, discharged or otherwise affected (except as expressly provided herein) by reason of: any damage to or destruction of or any Taking of the Demised Premises or any part thereof; any restriction or prevention of or interference with any use of the Demised Premises or any part thereof; and any claim which Lessee has or might have against Lessor; any failure on the part of Lessor to comply with or perform any of the terms hereof or of any other agreement with Lessee. Except as expressly provided herein, Lessee waives all rights now or hereafter conferred by statute or otherwise to quit, terminate or surrender this Lease or the Demised Premises or any part thereof, or to receive any abatement, suspension, deferment, diminution or reduction of any Rent payable by Lessee hereunder.

2

### 4.   Use of Demised Premises

Lessee covenants that the Demised Premises shall be used solely for a charter school under the auspices of the New York State Department of Education, together with parking, student activities, faculty meetings and gatherings, community events, and all uses ancillary thereto, and for no other purpose, unless approved in writing by Lessor.

Lessee shall not do or permit any act or thing which is contrary to any Legal Requirements or Insurance Requirements, or which might impair the usefulness of the Demised Premises or any part thereof. Lessee shall not use, or allow the Demised Premises or any part thereof or any Improvements now or hereafter erected thereon or any appurtenances thereto to be used or occupied, for any unlawful purpose or in violation of any certificate of occupancy, and shall not suffer any act to be done or any condition to exist within the Demised Premises or any part thereof, or in any Improvements now or hereafter erected thereon, or on any appurtenance to the Demised Premises, or permit any article to be brought therein, which may be dangerous, unless safeguarded as required by law, or which may constitute a nuisance, public or private, or which may make void or voidable any insurance in force with respect thereto.

Lessee shall not do or suffer any waste, damage, disfigurement or injury to the Demised Premises.

Lessee shall not permit the spilling, discharge, release, deposit or placement on the Demised Premises or any part thereof, whether in containers or other impoundments, of any substance which is a hazardous or toxic substance within the meaning of any applicable environmental law except for those substances as are typically found in similar premises used for school purposes and are being used by Lessee in a safe manner and in accordance with all applicable laws and manufacturer's specifications .

### 5.   Condition of Demised Premises

Lessee represents that Lessee has examined and is fully familiar with the physical condition of the Demised Premises, the Improvements thereon, the sidewalks and structures adjoining the same, subsurface conditions, and the present tenancies, and uses thereof. Lessee accepts the same, without recourse to Lessor, in the condition and state in which they now are, and agrees that the Demised Premises except that the Demised Premises shall be vacant and in broom clean condition, complies in all respects with all requirements of this Lease. Lessor makes no representation or warranty, express or implied in fact or by law, as to the nature or condition of the Demised Premises, or its fitness or availability for any particular use, or the income from or expenses of operation of the Demised Premises. Lessor shall not be liable for any latent or patent defect therein.

### 6.   Maintenance and Repair

Lessee, at all times during the Lease Term and at Lessee's expense, shall keep the Demised Premises, and all Improvements now or hereafter located thereon, and all facilities and equipment thereon, and the adjoining sidewalks, curbs and all appurtenances to the Demised Premises, in a good and clean order and condition and in such condition as may be required by all Legal Requirements and Insurance Requirements, and promptly shall make all necessary or

3

appropriate repairs, replacements and renewals thereof, whether interior or exterior, structural or nonstructural, ordinary or extraordinary, or foreseen or unforeseen. The foregoing obligations shall include repairs to the HVAC system, elevator system, plumbing system, electrical system, parking lot, floors, the fire/life safety systems serving the Improvements and light fixtures (including replacement of bulbs). All repairs, replacements and renewals shall be equal in quality and class to the original work. Lessee waives any right created by any law now or hereafter in force to make repairs to the Demised Premises at Lessor's expense. Notwithstanding the foregoing, Landlord shall keep and maintain in good repair and working order and shall perform maintenance and repairs upon, and replace, as necessary (a) the structural elements of the Improvements; and (b) the roof of the Improvements. Landlord shall replace, as necessary, the mechanical (including HVAC), electrical, plumbing, elevator and fire/life safety systems serving the Improvements. Additionally, if any repair that would have been required to be made by Lessee as provided above is of a magnitude or type that the expenditure thereon is a capital item that is normally amortized under recognized accounting standards, then Landlord and not Lessee shall be obligated to make such repairs. Landlord shall promptly make any repairs or replacements for which Landlord is responsible.

Lessee has been informed that the Lessor intends to demolish the Gym. The Gym is not now occupied or used, nor may it be occupied or used. Lessee shall make no objection to the demolition of the Gym, nor shall demolition be a cause for the reduction in rent unless Lessor's demolition work prevents Lessee from using the Demised Premises for the purposes contemplated by this Lease. Lessor shall make reasonable efforts not to interfere with Lessee's operations during the course of the demolition and shall not perform any demolition work during school hours. For the purposes of this Article, "school hours" shall mean 8 AM to 6 PM Monday through Friday provided that classes are being held for the regular students of the Lessee during the school year commencing in September. All such demolition work shall be done in accordance with applicable laws, rules and regulations. Any damage to the Improvements caused by the demolition of the Gym shall be promptly repaired by Lessor at Lessor's sole cost and expense. In connection with such demolition Lessor shall (i) properly close off any openings in the walls of the Improvements that were adjoining the Gym and shall install any insulation that is necessary to protect the Improvements from the elements in the same manner as the remainder of the Improvements and (ii) install windows at end of hallways of school space where the doors to Gym were installed on two floors and a third window on third floor, as well as windows in class room that has a common wall with Gym, provided same are already shown on the plans which have previously been approved by the Department of Buildings, (iii) obtain and submit to Lessee for its information, the plans for the demolition prior to commencement of the work and coordinate with Lessee to minimize any impact on operation of the school and the use of the parking lot and (iv) carry such insurance as Lessee is required to provide pursuant to Section 13 hereof during any alterations or construction. Lessor represents that the legal occupancy and use of the Demised Premises will not be adversely affected by the demolition of the Gym. It is understood by the parties that the Lessee shall not use or occupy that structure (the Gym) for any purpose. For the avoidance of doubt, Lessor shall have no right to construct any improvements on the Demised Premises.

## 7.    **Alterations and Additions**

If not at the time in default under this Lease beyond applicable notice and/or grace periods, Lessee at Lessee's expense may make reasonable alterations of and additions to the Demised Premises, provided that any alteration or addition: shall not change the general character of the Demised Premises, or reduce the fair market value thereof below its value immediately before such alteration or addition, or impair the usefulness of the Demised Premises; is effected with due diligence, in a good and workmanlike manner and in compliance with all Legal Requirements and Insurance Requirements; is promptly and fully paid for by Lessee; and is made, in case the estimated cost of such alteration or addition exceeds $50,000.00, only after Lessee shall have obtained Lessor's prior written consent thereto (which consent shall not be unreasonably withheld) and if warranted by the nature of such work, under the supervision of an architect or engineer reasonably satisfactory to Lessor and in accordance with plans, specifications and cost estimates reasonably approved by Lessor.

The title to all additions, repairs and replacements to any Improvements made during the Lease Term and any renewal thereof, forthwith shall vest in Lessor, and said Improvements, additions, repairs and replacements shall be and become the sole and absolute property of Lessor, without any obligation of payment by Lessor therefor.

Lessor hereby consents to the installation by Lessee of a doorway at the location shown on Exhibit B attached hereto. in order to permit the Lessor to access to the cafetorium and to permit the Pastor to access the Pastors study through the Demised Premises, in each case when the school is closed. Lessor will reimburse the Lessee for the reasonable, documented costs of the construction of such doorway.

## 8.    **Impositions**

Subject to Article 11 relating to contests, Lessee, at Lessee's expense, shall bear, pay and discharge all Impositions at least twenty days prior to the last day upon which the same may be paid without any interest, penalty, fine or cost being added for the late payment thereof, and shall furnish to Lessor for inspection within thirty days after request, official receipts of the appropriate taxing authority or other proof satisfactory to Lessor evidencing such payment. If by law any Imposition may be paid in installments, Lessee shall be obligated to pay only those installments as they become due from time to time before any interest, penalty, fine or cost may be added thereto. Any Imposition relating to the fiscal period of the taxing authority, part of which is included within the Lease Term and a part of which precedes or extends beyond the Lease Term, shall, if Lessee shall not be in default hereunder, be apportioned between Lessor and Lessee as of the commencement or expiration, as the case may be, of the Lease Term. An official certificate or statement issued or given by any sovereign or governmental authority or agency, or any public utility, showing the existence of any Imposition, or interest or penalties thereof, the payment of which is the obligation of Lessee as provided herein, shall be prima facia evidence for all purposes of this Lease of the existence, amount and validity of such Imposition.

Lessor represents to Lessee that on the date of this lease, the Demised Premises benefits from a real property tax exemption by reason of the tax exempt status of the Lessor and the current Lessee (Grand Concourse Academy Charter School). Lessee understands that Lessor

cannot guarantee future real property tax exemption for the Demised Premises because the same
is subject to the continued eligibility of the Lessor and the Lessee, but the parties represent to
each other that the will cooperate in maintaining eligibility subject to the requirements of the
applicable statutes, ordinances, rules and regulations. Notwithstanding the foregoing, if the
Lessor sells or ground leases the Demised Premises to an entity that is not tax exempt such that
the Demised Premises will no longer benefit from such real property tax exemption, then in such
event Lessee shall not be liable for any real estate taxes which may be imposed on the Demised
Premises.

### 9.    Compliance with Requirements

Subject to Article 11 relating to contests, Lessee, at all times during the Lease
Term and at Lessee's expense, promptly and diligently shall: comply in all material respects with
all Legal Requirements and Insurance Requirements, whether or not compliance therewith shall
(subject to the provisions of Section 6 above relating to capital improvements and repairs)
require structural changes in the Improvements or interfere with the use and enjoyment of the
Demised Premises or any part thereof; comply with any instruments of record at the time
affecting the Demised Premises or any part thereof; and procure, maintain and comply with all
permits, licenses, franchises and other authorizations required for any use of the Demised
Premises or any part thereof then being made, including without limitation all permits, licenses,
and franchises which Lessee is required to obtain for the proper operation or maintenance of the
Improvements or Lessee's Equipment or any part thereof.

Lessee shall not by act or omission impair the integrity of the Demised Premises
as a zoning lot separate and apart from all other property. Any attempt by Lessee to take any
action which would violate any provision of this paragraph shall be null and void. Lessee shall
not by act or omission impair the integrity of the Demised Premises as a zoning lot or lots
separate and apart from all other property. Any attempt by Lessee to take any action which
would violate any provision of this paragraph shall be null and void.

Lessee hereby acknowledges that Lessor does not hereby consent, expressly or by
implication, to the unrestricted use or possession of any portion of the Demised Premises by the
public.

### 10.    Liens

Lessee shall not directly or indirectly create or permit to be created or to remain,
and shall discharge, any mortgage, lien, security interest, encumbrance or charge on, pledge of or
conditional sale or other retention agreement with respect to the Demised Premises or any part
thereof, Lessee's interest therein, or any Fixed Rent or other Rent payable under this Lease, other
than: the Occupancy Leases; liens for Impositions not yet payable, or payable without the
addition of any fine, penalty, interest or cost for nonpayment, or being contested as permitted in
Article 11 hereof; and the liens of mechanics, materialmen, suppliers or vendors, or right thereto,
incurred in the ordinary course of business for sums which under the terms of the related contract
are not at the time due, provided that adequate provision for the payment thereof shall have been
made and provisions of the following paragraph are complied with.

6

076088-0660-00754-Active.17190282.5                                      04/30/2015 8:52 PM

If, in connection with any work being performed by or for Lessee or any subtenant or in connection with any materials being furnished to Lessee or any subtenant, any mechanic's lien or other lien or charge shall be filed or made against the Demised Premises or any part thereof, or if any such lien or charge shall be filed or made against Lessor, then Lessee, at Lessee's expense, within thirty days after such lien or charge shall have been filed or made, shall cause the same to be canceled and discharged of record by payment thereof or filing a bond or otherwise. Lessee promptly and diligently shall defend any suit, action or proceeding which may be brought for the enforcement of such lien or charge; shall satisfy and discharge any judgment entered therein within thirty days from the entering of such judgment by payment thereof or filing a bond or otherwise; and on demand shall pay all damages, costs and expenses, including reasonable attorneys' fees, suffered or incurred by Lessor in connection therewith.

Nothing contained in this Lease shall constitute any consent or request by Lessor, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Demised Premises or any part thereof.

## 11.    **Permitted Contests**

Lessee, at Lessee's expense, after prior written notice to Lessor, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any Imposition or any Legal Requirement, or the application of any instrument of record referred to in Article 9 hereof, provided that: Lessee shall first make all contested payments, under protest if Lessee desires, unless such proceedings shall suspend the collection thereof from Lessor, from any Rent and from the Demised Premises; neither the Demised Premises, nor any part thereof or interest therein, nor any Rent would be in any danger of being sold, forfeited, lost or interfered with; in the case of a Legal Requirement, Lessor would not be in any danger of any additional civil or criminal liability for failure to comply therewith and the Demised Premises would not be subject to the imposition of any lien as a result of such failure; and Lessee shall have furnished such security, if any, as may be reasonably requested by Lessor.

Prior to any Imposition being contested becoming due, and from time to time thereafter until payment thereof shall be made or shall be determined not to be payable by the appropriate body having jurisdiction, Lessee shall deposit and maintain with Lessor an amount of money, or other security reasonably satisfactory to Lessor, sufficient to pay the items so contested or intended to be contested together with the interest and penalties thereon which may accrue during such contest, which amount shall be held by Lessor and may be applied by Lessor to the payment of such items, interest and penalties, when finally fixed and determined. If the amount deposited with Lessor shall exceed the amount of such items, and any interest and penalties, any excess remaining in Lessor's hands after the payment thereof shall be returned to Lessee. At any time, prior to or during any such contest, Lessor, after written notice to Lessee, may pay and apply said money, or so much thereof as may be required, to the payment of any Impositions, interest and penalties which, in Lessor's judgment, should be paid to prevent the sale of the Demised Premises or any part thereof or of the lien created thereby, or to prevent the commencement of any action of foreclosure or otherwise, by the holder of any such lien. To the extent that the amount of money so deposited with Lessor shall be insufficient fully to satisfy and discharge any such Imposition, and interest and penalties thereon, Lessor may pay the same and

7

the deficiency so paid by Lessor shall be and become immediately due and payable by Lessee to
Lessor.

## 12.    Utility Services

Lessee shall pay all charges for all public or private utility services and all
sprinkler systems and protection services at any time rendered exclusively to or in connection
with the Demised Premises or any part thereof; shall comply with all contracts entered into by
Lessee relating to any such services; and shall do all other things required for the maintenance
and continuance of all such services. If invoices or statements for any such services are sent to
Lessor, Lessee shall be obligated to pay such expenses within the later of (i) ten (10) days after
Lessee receives such invoice or statement or (ii) the due date for payment specified in such
invoice or statement.

## 13.    Insurance [being reviewed by Lessee's advisors]

Lessee, at all times during the Lease Term and at Lessee's expense, shall provide
and maintain in full force and effect with insurers reasonably approved by Lessor: (a) insurance
with respect to the Improvements [the Gym should be separately insured by the Lessor] against
loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending strike, civil
commotion, aircraft, vehicles, smoke and other risks from time to time included under "extended
coverage" policies, in an amount equal to at least 100% of the full replacement value of the
Improvements, and in any event in an amount sufficient to prevent Lessor or Lessee from
becoming a coinsurer of any loss under applicable policies, which shall be written on a
replacement cost basis; (b) public liability and property damage insurance protecting Lessor
against any and all liability occasioned by negligence, occurrence, accident or disaster in or
about the Demised Premises or any part thereof, or the Improvements now or hereafter erected
thereon, or adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, or any
appurtenances thereto, in amounts approved from time to time by Lessor, which amounts at the
date hereof shall be, in the case of public liability, $1,000,000 per person and $3,000,000 per
accident, and in the case of property damage, $500,000; (c) explosion insurance in respect of any
steam and pressure boilers and similar apparatus located on the Demised Premises in amounts
approved by Lessor, which amount at the date hereof shall be $500,000; (d) war risk insurance
when and to the extent obtainable from the Federal government; (e) Business Automobile
Liability in an amount not less than $1,000,000 per accident; (f) Umbrella Liability Insurance in
an amount not less than $5,000,000; (g) Special Form (or All Risk Form) property insurance,
including water damage covering all personal property, improvements and betterments and
business income of the Lessee, it's employees, guests, customers or any other party having
property on the Premises, in an amount sufficient to cover the full value of said property and/or
lost income. Said insurance shall contain a clause waiving the Insurance Company's right of sub
rogation against Lessor, its agents, employees or managers; (h) During the course of any
permitted alterations, restorations, repairs or construction at the Demised Premises, Lessee shall
provide or cause all contractor's performing work on the  Demised Premises to provide Owner's
Protective Liability insurance for the protection of Lessor, it's agents, employees and managers
in an amount not less than $1,000,000 per occurrence combined single limits for bodily injury
and property damage and Worker's Compensation insurance covering all persons performing
such alterations, restorations, repair or construction; (i) war risk insurance, when and to the

8

Case 1:22-cv-07269-VSB   Document 1   Filed 08/25/22   Page 18 of 42

extent obtainable from the Federal government or any agency thereof; (j) appropriate workers'
compensation or other insurance against liability arising from claims of workers in respect of and
during the period of any work on or about the Demised Premises; (k) if the Demised Premises
are located in an area which has been identified by the Secretary of Housing and Urban
Development as a flood hazard area, flood insurance in an amount at least equal to the maximum
limit of coverage available for the Demised Premises under the National Flood Insurance Act of
1968; and (l) insurance against such other hazards and in such amounts as is customarily carried
by prudent owners and operators of similar properties, and as Lessor reasonably may request.
Lessee shall comply with such other requirements as Lessor from time to time reasonably may
request for the protection by insurance of Lessor's interests.

         All insurance maintained by Lessee pursuant to this Article 13: (a) shall, except
for workers' compensation insurance, name Lessor and Lessee as insureds, as their respective
interests may appear, and shall include an effective waiver by the issuer of all rights of
subrogation against any named insured or such insured's interest in the Demised Premises or any
income derived therefrom; (b) shall provide that all insurance claims for losses of less than
$200,000 shall be adjusted by Lessee, and all insurance claims for losses of such amount or
more, except for workers' compensation insurance which shall be adjusted by Lessee, shall be
adjusted by Lessor; (c) shall provide, except in the case of public liability and workers'
compensation insurance, that insurance proceeds shall be payable to Lessor for the benefit of
Lessor and Lessee, as their respective interests may appear; (d) shall provide that any losses shall
be payable notwithstanding any act or failure to act or negligence of Lessor or Lessee or any
other person; (e) shall provide that no cancellation, reduction in amount or material change in
coverage thereof shall be effective until at least thirty (30) days after receipt by Lessor and
Lessee of written notice thereof; and (f) shall be satisfactory in all other respects to Lessor acting
reasonably. Any such insurance, at Lessee's option, may be provided through a blanket policy or
policies in form and substance reasonably satisfactory to Lessor, provided such policies shall
provide in a manner reasonably satisfactory to Lessor for specific allocation to the Demised
Premises of the coverage afforded by such blanket policy or policies, and provided further that
such blanket policy or policies give to Lessor no less protection than that which would be
afforded by separate policies.

         Upon the execution of this Lease and thereafter not less than fifteen days prior to
the expiration date of any policy delivered pursuant to this Article 13, Lessee shall deliver to
Lessor the originals of all policies or renewal policies, as the case may be, required by this Lease,
bearing notations evidencing the payment of the premiums therefor. In lieu of any such policies,
Lessee may deliver certificates of the insurer, in form and substance satisfactory to Lessor, as to
the issuance and effectiveness of such policies and the amounts of coverage afforded thereby,
accompanied by copies of such policies. If at any time Lessee shall neglect or fail to provide or
maintain insurance or to deliver insurance policies in accordance with this Article 13, Lessor
may, after giving Lessee at least ten (10) days prior notice, effect such insurance as agent for
Lessee, by taking out policies in companies selected by Lessor, and the amount of the premiums
paid for such insurance shall be paid by Lessee to Lessor on demand. Lessor, in addition to
Lessor's other rights and remedies, shall be entitled to recover as damages for any breach of this
Article 13 the uninsured amount of any loss, liability, damage, claim, costs and expenses
suffered or incurred by Lessor, and shall not be limited in the proof of damages to the amount of
the insurance premium not paid by Lessee for such insurance.

9

## 14.    Indemnification by Lessee and Lessor

Except to the extent caused by the negligence or willful misconduct of Lessor, Lessee shall indemnify and hold Lessor harmless from and against all liabilities, obligations, claims, damages, fines, penalties, interest, causes of action, costs and expenses, including reasonable attorneys' fees (but excluding any income or excess profits or franchise taxes of Lessor determined on the basis of general income or revenue or any interest or penalties in respect thereof), imposed upon or incurred by or asserted against Lessor or the Demised Premises by reason of the occurrence or existence of any of the following: any accident, injury to or death of persons (including workers) or loss of or damage to property occurring, or claimed to have occurred, on or about the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon, or the adjoining sidewalks or, curbs; any use or condition of the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon; any failure on the part of Lessee promptly and fully to comply with or perform any of the terms, covenants or conditions of this Lease; or performance of any labor or services or the furnishing of any materials or other property in respect of the Demised Premises or any part thereof. In the case any suit, action or proceeding is brought against Lessor or filed against the Demised Premises or any part thereof by reason of any such occurrence, Lessee, upon Lessor's request and at Lessee's expense, shall resist and defend such suit, action or proceeding, or cause the same to be resisted and defended by counsel designated by Lessee and reasonably approved by Lessor. The obligations of Lessee under this Article 14 shall survive the expiration or termination of the Lease Term.

Except to the extent caused by the negligence or willful misconduct of Lessee, Lessor shall indemnify and hold Lessee harmless from and against all liabilities, obligations, claims, damages, fines, penalties, interest, causes of action, costs and expenses, including reasonable attorneys' fees (but excluding any income or excess profits or franchise taxes of Lessor determined on the basis of general income or revenue or any interest or penalties in respect thereof), imposed upon or incurred by or asserted against Lessee by reason of the occurrence or existence of any of the following: (i) any accident, injury to or death of persons (including workers) or loss of or damage to property occurring, or claimed to have occurred, on or about the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon, or the adjoining sidewalks or, curbs; any use or condition of the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon which is caused by the willful misconduct or negligence of Lessor; (ii) any failure on the part of Lessor promptly and fully to comply with or perform any of the terms, covenants or conditions of this Lease; (iii) Lessor's use of the portions of the Demised Premises as are permitted hereunder, including the cafetorium and the parking lot; and (iv) performance of any labor or services or the furnishing of any materials or other property in respect of the Demised Premises or any part thereof, including, without limitation, the demolition of the Gym (including costs and expenses that may arise from the imposition of new legal requirements or build code violations as a result of the demolition of the Gym). In the case any suit, action or proceeding is brought against Lessee by reason of any such occurrence, Lessor, upon Lessee's request and at Lessor's expense, shall resist and defend such suit, action or proceeding, or cause the same to be resisted and defended by counsel designated by Lessor and reasonably approved by Lessee. The obligations of Lessee under this Article 14 shall survive the expiration or termination of the Lease Term.

**15.**    **Damage to or Destruction of the Demised Premises**

If there is any material damage to or destruction of the Demised Premises or any part thereof, Lessee promptly shall give written notice thereof to Lessor, generally describing the nature and extent of such damage or destruction.

If there is any damage to or destruction of the Demised Premises or any part thereof and the estimated cost of repairing such damage is $200,000 or less and the estimated time for completion of such repairs is three (3) months or less and the Demised Premises can be used for its intended purposes during the course of such repairs, then Lessee, at Lessee's expense whether or not the insurance proceeds, if any, on account of such damage or destruction shall be sufficient for the purpose, promptly shall commence and complete, subject to Unavoidable Delays, the restoration, replacement or rebuilding of the Demised Premises as nearly as possible to its condition and character immediately prior to such damage or destruction, with such alterations and additions as may be made at Lessee's election pursuant to and subject to the terms, covenants and conditions of Article 7. Pending the completion of such Restoration, Lessee shall perform all temporary work and take all such actions as may be necessary or desirable to protect and preserve the Demised Premises.

Insurance proceeds received by Lessor on account of any damage to or destruction of the Demised Premises or any part thereof, less the costs and expenses incurred by Lessor or Lessee in the collection thereof, including without limitation fees and expenses of adjusters and attorneys, shall be applied as hereinafter provided.

Net insurance proceeds received on account of any damage to or destruction of the Demised Premises or any part thereof, unless Lessee is in default under this Lease, shall be paid to Lessee or as Lessee may direct, from time to time as Restoration progresses, to pay or to reimburse Lessee for the cost of Restoration, upon written request of Lessee accompanied by evidence reasonably satisfactory to Lessor that the amount requested has been paid or is then due and payable and is properly a part of such cost, that there are no mechanics' or similar liens for labor or materials theretofore supplied in connection with the Restoration, and that the balance of said proceeds after making the payment requested will be sufficient to pay the balance of the cost of Restoration. Upon receipt by Lessor of evidence satisfactory to Lessor that the Restoration has been completed and the cost thereof has been paid in full, and that there are no mechanics' or similar liens for labor or materials supplied in connection therewith, the balance, if any, of such proceeds shall be paid to Lessor.

If there is any damage to or destruction of the Demised Premises or any part thereof and the estimated cost of repairing such damage is in excess of $200,000 or the estimated time for completion of such repairs is greater than three (3) months and the Demised Premises cannot be used for its intended purposes during the course of such repairs, then Lessee shall have the right to terminate this Lease upon fifteen (15) days prior notice to Lessor. Upon such termination Lessee shall pay and turn over to Lessor all insurance proceeds paid to Lessee on account of such damage plus, in the event Lessee has not fully complied with the insurance requirements of this Lease, any amount of insurance proceeds that should have been payable on account of such damage had the Lessee maintained the insurance required hereunder.

11

Any insurance proceeds held by Lessor on any termination of this Lease and not required to be paid to Lessee pursuant to this Article 15, shall be paid to and retained by Lessor.

### 16.    **Taking of the Demised Premises**

If there is a Taking of the fee of the entire Demised Premises, other than for a temporary use, this Lease shall terminate as of the date of such Taking. In case of a Taking, other than for temporary use, of such perpetual easement on the entire Demised Premises, or of such a substantial part of the Demised Premises, as shall result, in the good faith judgment of Lessor, in the Demised Premises remaining after such Taking (even after Restoration where made) being unsuitable for the use contemplated in this Lease, Lessee may terminate this Lease by written notice to Lessor given within sixty days after such Taking, as of a date specified in such notice within ninety days after such Taking. Any Taking of the Demised Premises of the character referred to in this Article 16, which results in the termination of this Lease, is referred to herein as a "Total Taking".

If there is a Taking of the Demised Premises other than a Total Taking, this Lease shall remain in full force and effect as to the principal of the Demised Premises remaining immediately after such Taking, without any abatement or reduction of Rent, except as may be expressly provided in this Article 16, and Lessee, at Lessee's expense whether or not the awards or payments, if any, on account of such Taking will be sufficient for the purpose, promptly shall commence and complete, subject to Unavoidable Delays, Restoration of the Demised Premises as nearly as possible to its value, condition and character immediately prior to such Taking, except for any reduction in area caused thereby, provided that in case of a Taking for temporary use Lessee shall not be required to effect Restoration (other than temporary work and actions necessary or desirable for the protection of the Demised Premises) until such Taking for a temporary use is terminated.

Awards and other payments on account of a Taking, less fees, costs and expenses incurred in connection therewith, shall be applied as follows:

(a)    Net awards and payments received on account of a Taking, other than a Taking for temporary use or a Total Taking, shall be held and applied from time to time as Restoration progresses, to pay or to reimburse Lessee for the cost of Restoration, upon written request of Lessee accompanied by evidence, satisfactory to Lessor, that the amount requested has been paid or is then due and payable and is properly a part of such cost, that there are no mechanics' or similar liens for labor or materials theretofore supplied in connection with the Restoration, and that the balance of said proceeds after making the payment requested will be sufficient to pay the balance of the cost of Restoration. Upon the completion of the Restoration, the balance, if any, of such awards and payments shall be paid to and retained by Lessor.

(b)    Net awards and payments received on account of a Taking for temporary use shall be held and applied to the payment of Rent until such Taking for temporary use is terminated and Restoration, if any, has been

completed, provided that, if any portion of such award or payment is made by reason of any damage to or destruction of the Demised Premises, such portion shall be held and applied as provided in the first sentence of clause (a) of this Article 16. The balance, if any, of such awards and payments, unless Lessee is in default hereunder, shall be paid to Lessee.

(c)     All awards and payments received on account of a Total Taking shall be paid to Lessor.

Notwithstanding the foregoing, if at the time of any Taking or at any time thereafter, Lessee shall be in default under this Lease and such default shall be continuing, Lessor is hereby authorized and empowered, in the name and on behalf of Lessee and otherwise, to file and prosecute Lessee's claim, if any, for an award on account of any Taking and to collect such award and apply the same, after deducting all fees, costs and expenses incident to the collection thereof, to the curing of any then existing default under this Lease.

If any portion of an award or other payment received on account of a Taking shall be paid to Lessor pursuant to the second sentence of clause (a) of this Article 16, each installment of Fixed Rent hereunder shall be reduced, commencing with the first Rent Payment Date following the date of such payment, by an amount to be computed by multiplying such installment in effect prior to such date by a fraction, the numerator of which is the amount of the award or payment made to Lessor in connection with such Taking after deduction of Lessor's expenses in the collection of such awards and payments, including without limitation fees and expenses of appraisers and attorneys, and the denominator of which is the fair market value of the Demised Premises prior to such Taking as determined by Lessor, acting reasonably, as reduced by the amount of any other such award or payment previously made to Lessor pursuant to the second sentence of clause (a) of this Article 16.

Revocation by any public authority of any license or permit to maintain or use any vault or other area within the streets adjoining the Demised Premises, shall not affect this Lease, or diminish any Rent payable by Lessee hereunder, or diminish any of Lessee's other obligations hereunder. Lessee shall comply with and perform all laws, rules, orders, ordinances, regulations and requirements relating to said vaults and other street areas. Lessee shall pay all fees, charges, taxes and other amounts imposed by reason of the existence or use of said vaults or other street areas.

### 17.    Quiet Enjoyment

Lessor covenants that so long as Lessee is not in default hereunder in the payment of any Rent or compliance with or the performance of any of the terms, covenants or conditions of this Lease on Lessee's part to be complied with or performed, Lessee shall not be hindered or molested by Lessor in Lessee's enjoyment of the Demised Premises.

### 18.    Right to Cure Lessee's Default

If Lessee fails to make any payment or to comply with or perform any term, covenant or condition of this Lease to be complied with or performed by Lessee within the time periods required under this Lease (including any applicable notice and/or grace periods), Lessor

may, but shall be under no obligation to, after thirty days' notice to Lessee (or upon shorter notice, or without notice, if necessary to meet an emergency situation or time limitation of a Legal Requirement), make such payment or perform or cause to be performed such work, labor, services, acts or things, and take such other steps as Lessor may deem advisable, to comply with any such term, covenant or condition which is in default. Entry by Lessor upon the Demised Premises for such purpose shall not waive or release Lessee from any obligation or default hereunder. Lessee shall reimburse Lessor (with interest at the rate of six percent per annum) for all sums so paid by Lessor and all costs and expenses incurred by Lessor in connection with the making of any payments, the performance of any act or other steps taken by Lessor pursuant to this Article 18.

14

## 19.   Events of Default and Termination

If any one or more of the following events ("Events of Default") shall occur:

(a)   if Lessee shall fail to pay any Fixed Rent within five (5) days of when as the same becomes due and payable; or

(b)   if Lessee shall fail to pay any Rent, other than Fixed Rent, when and as the same becomes due and payable and such failure shall continue for more than ten (10) days; or

(c)   if Lessee shall fail to comply with or perform any term, covenant or condition of Articles 8, 9, 10 or 13, and such failure shall continue for more than thirty (30) days after Lessee receives notice of such failure, regardless of the source of such notice; or

(d)   if Lessee shall fail to comply with or perform any other term, covenant or condition hereof, and such failure shall continue for more than sixty (60) days after notice thereof from Lessor, and Lessee within said period, subject to Unavoidable Delays, shall not commence with due diligence and dispatch the curing of such default, or, having so commenced, thereafter shall fail or neglect to prosecute or complete with due diligence and dispatch the curing of such default for reasons other than Unavoidable Delays; or

(e)   if Lessee shall make a general assignment for the benefit of creditors, or shall admit in writing Lessee's inability to pay Lessee's debts as they become due, or shall file a petition in bankruptcy, or shall be adjudicated a bankrupt or insolvent, or shall file a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, or shall file an answer admitting, or shall fail to contest, the material allegations of a petition filed against Lessee in any such proceeding, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Lessee or any material part of Lessee's properties; or

(f)   if, within ninety days after the commencement of any proceeding against Lessee seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed or stayed, or if, within ninety days after the appointment without the consent of acquiescence of Lessee, of any trustee, receiver or liquidator of Lessee or of any material part of Lessee's properties, such appointment shall not have been vacated; or

(g)   if a final judgment for the payment of money in excess of $100,000 shall be rendered against Lessee and, within sixty days after the

entry thereof, such judgment shall not have been discharged or execution thereof stayed pending appeal, or if, within sixty (60) days after the expiration of any such stay, such judgment shall not have been discharged;

**then,** and in any such Event of Default, regardless of the pendency of any proceeding which has or might have the effect of preventing Lessee from complying with the terms, covenants or conditions of this Lease, Lessor, at any time thereafter may give a written termination notice to Lessee, and on the date specified in such notice this Lease shall terminate and, subject to Article 25, the Lease Term shall expire and terminate by limitation, and all rights of Lessee under this Lease shall cease, unless before such date (i) all arrears of Rent (with interest at the rate of six percent per annum) and all costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of Lessor hereunder, shall have been paid by Lessee, and (ii) all other defaults at the time existing under this Lease shall have been fully remedied to the satisfaction of Lessor. Lessee shall reimburse Lessor for all costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of Lessor occasioned by or in connection with any default by Lessee under this Lease.

### 20.    Repossession

If an Event of Default shall have occurred and be continuing, Lessor, whether or not the Lease Term shall have been terminated pursuant to Article 19, may enter upon and repossess the Demised Premises or any part thereof by force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all property therefrom.

### 21.    Reletting

At any time or from time to time after the repossession of the Demised Premises or any part thereof pursuant to Article 20, whether or not the Lease Term shall have been terminated pursuant to Article 19, Lessor may (but shall be under no obligation to) relet the Demised Premises or any part thereof for the account of Lessee, for such term or terms (which may be greater than or less than the period which would otherwise have constituted the balance of the Lease Term) and on such conditions (which may include concessions or free rent) and for such uses as Lessor, in Lessor's absolute discretion, may determine, and may collect and receive the rents therefrom. Lessor, at Lessor's option, may make such alterations and decorations in the Demised Premises as Lessor, in Lessor's sole judgment, considers necessary or advisable for the purpose of reletting the Demised Premises or any part thereof, and the making of such alterations and decorations shall not operate or be construed to release Lessee from any liability under this Lease. Lessor shall not be responsible or liable for any failure to relet the Demised Premises or any part thereof or for any failure to collect any rent due upon any such reletting.

### 22.    Assignment of Subrents

Lessee hereby irrevocably assigns to Lessor all rents due or to become due from any assignee of Lessee's interest hereunder and any sublessee or any tenant or occupant of the Demised Premises or any part thereof, together with the right to collect and receive such rents, provided that, so long as Lessee is not in default under this Lease, Lessee shall have the right to

16

collect such rents for Lessee's own use and purposes. Upon any default by Lessee under this Lease, Lessor shall have absolute title to such rents and the absolute right to collect the same. Lessor shall apply to the Rent due under this Lease the net amount (after deducting all costs and expenses incident to the collection thereof and the operation and maintenance, including repairs, of the Demised Premises) of any rents so collected and received by Lessor. Lessee shall not demand or accept from any sublessee, tenant or occupant of the Demised Premises or any part thereof, any payment, prepayment or advance payment in respect of more than one rental period under the applicable sublease and in no event shall Lessee demand or accept any payment, prepayment or advance payment for a period exceeding one month.

### 23. Lessee's Equipment

All Lessee's Equipment shall be the property of Lessee or Occupancy Tenants, as the case may be.

Any Lessee's Equipment not removed by Lessee, at Lessee's expense, within thirty days after any repossession of the Demised Premises, whether or not this Lease has been terminated, shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without notice to Lessee and without obligation to account therefor; and Lessee shall pay Lessor, on demand, all costs and expenses incurred by Lessor in removing, storing or disposing of any of Lessee's Equipment. Lessee shall immediately repair at Lessee's expense all damage to the Demised Premises caused by any removal of Lessee's Equipment therefrom, whether effected by Lessee or by any other person. Lessor shall not be responsible for any loss or damage to Lessee's Equipment. The ownership of Occupancy Tenants' Equipment shall be governed by the terms of the applicable Occupancy Lease.

### 24. Signage

Lessee shall have the right to place at or in one or more locations upon or within the Demised Premises such signs, banners or other displays which indicate the existence of Lessee's school and announce any events or activities relating so such school. Such signage shall not damage the Demised Premises, shall be done in accordance with applicable law and shall otherwise be approved by the Lessor, such approval not to be unreasonably withheld.

### 25. Survival of Lessee's Obligations and Damages

No expiration or termination of the Lease Term pursuant to this Lease, by operation of law or otherwise (except as expressly provided herein), and no repossession of the Demised Premises or any part thereof pursuant to this Lease or otherwise, shall relieve Lessee of Lessee's obligations or liabilities hereunder, all of which shall survive such expiration, termination or repossession for a period of six (6) months.

In the event of any such expiration, termination or repossession, Lessee shall pay to Lessor all Rent up to the time of such expiration, termination or repossession, together with all costs and expenses incurred by Lessor in connection with such termination or repossession including attorneys' fees, and thereafter Lessee, until the end of what would have been the Lease Term in the absence of such expiration, termination or repossession, and whether or not the Demised Premises or any part thereof shall have been relet, shall be liable to Lessor for, and

17

shall pay to Lessor, as liquidated and agreed and current damages for Lessee's default, (a) all Rent which would be payable under this Lease by Lessee in the absence of such expiration, termination or repossession, less (b) all net rents collected by Lessor from the tenants or subtenants of the Demised Premises, if any, and the net proceeds, if any, of any reletting affected for the account of Lessee pursuant to Article 21 after deducting from such proceeds all Lessor's expenses in connection with such reletting and other sums owed Lessor, including without limitation all repossession costs, brokerage commissions, legal and accounting expenses, attorneys' fees, employees' expenses, promotional expenses, reasonable alteration costs, and expenses of preparation for such reletting. Lessee shall pay such current damages monthly on the Rent Payment Dates applicable in the absence of such expiration, termination or repossession, and Lessor shall be entitled to recover the same from Lessee on each such date. Any suit brought to collect said amounts for any month or months shall not prejudice in any way the rights of Lessor to collect the deficiency for any subsequent month by similar action or proceeding.

At any time after such expiration, termination or repossession, whether or not Lessor shall have collected any current damages as aforesaid, Lessor shall be entitled to recover from Lessee, and Lessee shall pay to Lessor on demand, as and for liquidated and agreed final damages for Lessee's default and in lieu of all current damages beyond the date of such demand, an amount equal to the excess, if any, of (a) all Rent which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Lessee shall have satisfied in full Lessee's obligation under the preceding paragraph of this Article 25 to pay current damages) until what would be the then unexpired Lease Term in the absence of such expiration, termination or repossession, over (b) the then fair net rental value of the Demised Premises for the same period. In determining said fair net rental value, the rent realized by any reletting of the Demised Premises, if such reletting is upon terms (other than rental amounts) generally comparable to the terms of this Lease, shall be deemed to be said fair net rental value. Upon the payment of such final damages, this Lease, if not already terminated, shall be deemed terminated. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Lessor shall be entitled to the maximum amount allowable under such statute or rule of law.

## 26.    **Injunction**

Lessor, in addition to all other rights, powers and remedies and notwithstanding the concurrent pendency of summary or other dispossess proceedings, at Lessor's option, shall have the right at all times during the Lease Term to restrain by injunction any violation or attempted violation by Lessee of any of the terms, covenants or conditions of this Lease, and to enforce by injunction any of such terms, covenants or conditions.

## 27.    **Waivers**

To the extent permitted by law, Lessee waives: any notice of reentry or of the institution of legal proceedings to that end; any right of redemption, reentry or repossession; and the benefit of any laws now or hereafter in force exempting property for rent or for debt. Lessor and Lessee hereby waive any right to trial by jury in any action or proceeding or in any matter in any way connected with this Lease or the Demised Premises.

No failure by Lessor or Lessee to insist upon the strict performance of and compliance with any term, covenant or condition hereof or to exercise or enforce any right, power or remedy consequent upon a breach thereof, and no submission by Lessee or acceptance by Lessor of full or partial Rent during the continuance of any such breach, shall constitute a waiver of any such breach or of any such term, covenant or condition. No waiver of any breach of any term, covenant or condition of this Lease shall affect or alter this Lease, which shall continue in full force and effect, or the respective rights, powers or remedies of Lessor or Lessee with respect to any other then existing or subsequent breach.

### 28.    Lessor's Remedies Cumulative

All of the rights, powers and remedies of Lessor provided for in this Lease or now or hereafter existing at law or in equity, or by statute or otherwise, shall be deemed to be separate, distinct, cumulative and concurrent. No one or more of such rights, powers or remedies, nor any mention of reference to any one or more of them in this Lease, shall be deemed to be in the exclusion of, or a waiver of, any other rights, powers or remedies provided for in this Lease, or now or hereafter existing at law or in equity, or by statute or otherwise. The exercise or enforcement by Lessor of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise or enforcement by Lessor of any or all of such other rights, powers or remedies.

### 29.    Assignment, Subletting and Mortgages

Lessee expressly covenants that Lessee shall not voluntarily or involuntarily assign, encumber, mortgage or otherwise transfer this Lease, or sublet the Demised Premises or any part thereof, or suffer or permit the Demised Premises or any part thereof to be used or occupied by others, by operation of law or otherwise, without the prior written consent of Lessor in each instance, such consent not to be unreasonably withheld provided that assignment or subletting is to a charter school or similar educational establishment. Absent such consent, any act or instrument purporting to do any of the foregoing shall be null and void.

If this Lease is assigned, whether or not in violation of the terms of this Article 29, Lessor may collect Rent from the assignee. If the Demised Premises or any part thereof are sublet or occupied by anybody other than Lessee, Lessor, after any default by Lessee, may collect rent from the subtenant or occupant, and apply the net amount collected to the Rent due hereunder. Such collection of rent by Lessor shall not be deemed a waiver of the provisions hereof, the acceptance of the assignee, subtenant or occupant as a tenant, or a release of Lessee from the further observance and performance by Lessee of the terms, covenants and conditions of this Lease.

The consent by Lessor to an assignment, encumbrance, transfer or subletting shall not in any way be deemed consent to any further assignment, encumbrance, transfer or subletting. In no event shall any permitted sublessee assign or encumber its sublease or further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space or any part thereof to be used or occupied by others, without the prior written consent of Lessor in each instance, and each permitted sublease shall so provide in its terms.

19

10-27-'17 13:49 FROM-                                                    T-090  P0023/0036 F-337

If Lessee requests Lessor's consent to a specific assignment or subletting, Lessee shall first submit to Lessor in writing: the name and address of the proposed assignee or sublessee; a counterpart of the proposed agreement of assignment or sublease and all other instruments or agreements pertaining thereto; such information as to the nature and character of the business of the proposed assignee or sublessee and as to the nature of its proposed use of the space, as Lessor reasonably may request; banking, financial or other credit information relating to the proposed assignee or sublessee sufficient to enable Lessor to determine the financial responsibility and character of the proposed assignee or sublessee; and a statement of all sums or other consideration paid or to be paid to Lessee by or for the account of the assignee or sublessee for or in connection with such assignment or sublease, including, without limitation, sums paid or to be paid for the sale or rental of Lessee's fixtures, leasehold improvements, equipment, furniture, furnishings or other personal property.

Any such consent of Lessor shall be subject to the terms of this Lease and conditional upon there being no default by Lessee, beyond any grace period, under any term, covenant or condition of this Lease at the time that Lessor's consent is requested and on the date of the commencement of the term of any such proposed sublease or the effective date of any such proposed assignment.

Upon receiving Lessor's written consent, a duly executed copy of the sublease or assignment shall be delivered to Lessor within thirty days after execution thereof. Any such sublease shall provide that the sublessee shall comply with all applicable terms, covenants and conditions of this Lease to be observed or performed by Lessee hereunder. Any such assignment shall contain an assumption by the assignee of all of the terms, covenants and conditions of this Lease to be observed or performed by Lessee.

If Lessee requests Lessor's consent to an assignment of Lessee's interest hereunder or to a subletting of the entire Demised Premises to other than a charter school or similar educational establishment, Lessor shall have the right to terminate this Lease by sixty days notice to Lessee.

The transfer of a majority of the issued and outstanding capital stock of any corporate tenant or subtenant of this Lease or of a majority of the total interest in any partnership tenant or subtenant, however accomplished, and whether in a single transaction or in a series of related or unrelated transactions, shall be deemed an assignment of this Lease or of such sublease. The transfer of outstanding capital stock of any corporate tenant or subtenant, for purposes of this Article 29, shall not include a sale of such stock by persons other than those deemed "insiders" within the meaning of the Securities Exchange Act of 1934 as amended, effected through any "over the counter" market or recognized stock exchange.

## 30.   **Subordination and Attornment**

This Lease, and all rights of Lessee hereunder, are and shall be subject and subordinate in all respects to all mortgages which may now or hereafter affect the Demised Premises, whether or not such mortgages shall also cover other lands or buildings, to each and every advance made or hereafter to be made under such mortgages and to all renewals, modifications, replacements, spreaders, consolidations and extensions of such mortgages. In the

076088-0660-00754-Active.17190282.5                                                04/30/2015 8:52 PM

event of any sale of the Demised Premises in a foreclosure of any such mortgage or the exercise by the holder of any such mortgages of any other remedies provided for by law or in such mortgage, Lessee, upon written request of the holder of the mortgage or the purchaser at such foreclosure or any person succeeding to the interest of the holder of the mortgage, shall attorn to such holder, purchaser or successor in interest, as the case may be, without change in the terms, covenants or conditions of this Lease. If such a request is made, this Lease shall not be deemed to be terminated by any foreclosure proceedings or other remedies for the enforcement of the mortgage by such holder, purchaser or successor in interest. The provisions of this Article 30 shall be self-operative and no further instrument of subordination and/or attornment shall be required. In confirmation of such subordination and/or attornment, Lessee promptly shall execute and deliver at Lessee's expense any instrument that Lessor or the holder of any such mortgage may reasonably request to evidence such subordination and/or attornment. Notwithstanding the foregoing, it shall be a condition to the foregoing subordination of this Lease that the holder of any such mortgage execute a non-disturbance agreement in form and substance reasonably satisfactory to Lessee and such holder. Additionally, Lessor shall use best efforts to obtain from the current holder of the mortgage on the Demised Premises a customer non-disturbance agreement in favor of the Lessee.

### 31.   Entry by Lessor

Lessor and the authorized representatives of Lessor shall have the right to enter the Demised Premises at all reasonable times and upon reasonable prior notice for the purpose of inspecting the same or for the purpose of doing any work permitted to be done by Lessor under this Lease. Nothing contained in this Lease shall create or imply any duty on the part of Lessor to make any such inspection or do any such act. Lessor and representatives of Lessor shall have the right to enter the Demised Premises at all reasonable times and upon reasonable prior notice for the purpose of showing the Demised Premises to prospective purchasers or mortgagees, and at any time during the twelve month period preceding the expiration or termination of this Lease, for the purpose of showing the same to prospective tenants, and within said twelve month period to display on the Demised Premises a customary sign indicating that the Demised Premises are for sale or letting if such signs do not interfere unreasonably with the business then conducted on the Demised Premises. No such entry shall constitute an eviction of Lessee. Lessor agrees that as entry in to the Demised Premises as provided above shall (in the absence of an emergency) be done in a manner so as to not interfere with the classroom activities of the students or the operations of the school.

### 32.   Conveyance by Lessor

If the original or any successor Lessor shall convey or otherwise dispose of the Land and Improvements, upon the assumption by such successor or buyer of all of the Lessor's obligations and liabilities under this Lease, Lessor shall thereupon be released from all obligations and liabilities of Lessor under this Lease (except those accruing prior to such conveyance or other disposition), and such obligations and liabilities shall be binding solely on the then owner of the Land and Improvements.

In any action brought to enforce the obligations or liabilities of Lessor under this Lease, any judgment or decree shall be enforceable against Lessor only to the extent of Lessor's

21

10-27-'17 13:50 FROM-                                           T-090  P0025/0036 F-337
Case 1:22-cv-07269-VSB   Document 1   Filed 08/25/22   Page 31 of 42

interest in the Land and Improvements, and rents therefrom and any insurance or condemnation proceeds payable with respect thereto, and no such judgment shall be the basis of execution on, or be a lien on, assets of Lessor other that Lessor's interest in the Land and Improvements.

### 33.    No Merger of Title

There shall be no merger of the leasehold estate created by this Lease with the fee estate in the Demised Premises by reason of the fact that the same person may own or hold (a) the leasehold estate created by this Lease or any interest therein, and (b) the fee estate in the Demised Premises or any interest in such fee estate. No such merger shall occur unless and until all persons having any interest in the leasehold estate created by this Lease, and in the fee estate in the Demised Premises, shall join in a written instrument effecting such merger and shall duly record the same.

### 34.    Acceptance of Surrender

No modification, termination or surrender of this Lease or surrender of the Demised Premises or any part thereof or of any interest therein by Lessee shall be valid or effective unless agreed to and accepted in writing by Lessor, and no act by any representative or agent of Lessor, other than such a written agreement and acceptance, shall constitute an acceptance thereof.

### 35.    End of Lease Term

Upon the expiration or termination of the Lease Term, Lessee shall quit, surrender and deliver to Lessor the Demised Premises with the Improvements thereon in good order and condition, ordinary wear and tear excepted, and shall remove all Lessee's Equipment therefrom.

If Lessee abandons the Demised Premises at any time prior to the expiration or termination of this Lease, Lessee shall cause the Demised Premises to be patrolled by armed guards on a 24 hour basis so as to prevent vandalism or other damage to the Demised Premises.

### 36.    Brokerage

Lessor and Lessee each represents and warrants to the other that such party has not dealt with any broker or finder in connection with the Demised Premises or this Lease. Lessor and Lessee each agrees to indemnify and hold the other harmless from and against any and all commission, liability, claim, loss, damage or expense, including reasonable attorneys' fees, arising from any claims for brokerage or any other fee or commission by any person with whom such party has dealt.

### 37.    Definitions

As used in this Lease, the following terms have the following respective meanings:

"default" -- any condition or event which constitutes, or which after notice or lapse of time or both would constitute, an Event of Default.

22

076088-0660-00754-Active.17190282.5                                           04/30/2015 8:52 PM

"Demised Premises" — as defined in Article 1.

"Event of Default" -- as defined in Article 19.

"Fixed Rent" -- as defined in Article 2.

"Impositions" -- all taxes, assessments (including without limitation all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Lease Term), water and sewer rents and charges, charges for public utilities, excises, levies, license fees, permit fees, inspection fees and other authorization fees and other charges of every nature and kind whatsoever (including all interest and penalties thereon), in each case, whether general or special, ordinary or extraordinary, foreseen or unforeseen, of every character, which at any time during or in respect of the Lease Term may be assessed, levied, charged, confirmed or imposed on or in respect of or be a lien upon (a) the Demised Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (b) any occupancy, use or possession of or activity conducted on the Demised Premises or any part thereof. The term "Impositions" shall exclude, however, any income taxes assessed against Lessor, franchise, estate, inheritance or transfer taxes of Lessor, or any tax or charge in replacement or substitution of the foregoing or of a similar character; provided, however, that if at any time during the Lease Term the then prevailing method of taxation or assessment shall be changed so that the whole or any part of the Impositions theretofore payable by Lessee as above provided, shall instead be levied, charged, assessed or imposed whole or partially on the rents received by Lessor from the Demised Premises, or shall otherwise be imposed against Lessor in the form of a franchise tax or otherwise, then Lessee shall pay the same (and the same shall be deemed Impositions) at least twenty days prior to the last day upon which the same may be paid without interest or penalty for the late payment thereof.

"Improvements" — as defined in Article 1. The term "Improvements" shall include all fixtures, equipment and machinery now situate on or appurtenant to the Improvements referred to in Article 1, other than Lessee's Equipment.

"Insurance Requirements" -- all terms of any insurance policy covering or applicable to the Demised Premises or any part thereof, all requirements of the issuer of any such policy, and all orders, rules, regulations and other requirements of the National Board of Fire Underwriters, or its successor or any other body exercising similar functions, applicable to or affecting the Demised Premises or any part thereof or any use or condition of the Demised Premises or any part thereof.

"Land" -- as defined in Article 1.

"Lease" -- this Lease, as at the time amended, modified or supplemented.

"Lease Term" -- as defined in Article 1, as the same may be extended or renewed.

"Legal Requirements" -- all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen or unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Demised Premises or any part thereof, or the Improvements now or hereafter located thereon, or the facilities or equipment therein, or any of the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, or the appurtenances to the Demised Premises or the franchises and privileges connected therewith, or any use or condition of the Demised Premises or any part thereof. Legal Requirements shall include the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., and all other applicable environmental laws and regulations, and all requirements to be complied with pursuant to any certificate of occupancy affecting the Demised Premises.

"Lessee's Equipment" -- all fixtures, machinery, apparatus, furniture, furnishings and other equipment and all temporary or auxiliary structures installed by or at the request of Lessee or any Occupancy Tenant, if any, in or about the Demised Premises or any part thereof, which (a) are not used and are not procured for use, in whole or in part, in connection with the operation, maintenance or protection of the Demised Premises, and (b) are removable without damage to the Demised Premises.

"Occupancy Lease" -- any lease of any space constituting part of the Demised Premises.

"Occupancy Tenant" -- any tenant or occupant under any Occupancy Lease.

"Occupancy Tenants' Equipment" -- all Lessee's Equipment which under the terms of any Occupancy Lease or otherwise is the property of an Occupancy Tenant.

"person" -- an individual, a corporation, an association, a partnership, a joint venture, an organization, or other business entity, or a governmental or political unit or agency.

"Rent Payment Date" -- as defined in Article 2.

24

"Restoration" – all restorations, replacements, rebuildings, alterations, additions, temporary repairs and property protection to be performed in connection with a taking of the Demised Premises or the damage to or destruction of the Demised Premises.

"Taking" -- a taking during the Lease Term of all or any part of the Demised Premises, or any leasehold or other interest therein or right accruing thereto, as the result of the exercise of the right of condemnation or eminent domain or a sale in lieu or in anticipation of such exercise or a change or grade affecting the Demised Premises or any part thereof.

"Total Taking" -- as defined in Article 16.

"Unavoidable Delays" – delays due to strikes, acts of God, governmental restrictions, enemy action, riot, civil commotion, fire, unavoidable casualty or other causes beyond the control of Lessee, provided that no delay shall be deemed an Unavoidable Delay if the Demised Premises or any part thereof or interest therein or any Rent would be in any danger of being sold, forfeited, lost or interfered with, or if any Occupancy Tenant, Lessor or Lessee would be in danger of incurring any civil or criminal liability for failure to perform the required act. Lack of funds shall not be deemed a cause beyond the control of Lessee.

### 38.    Notices

All notices, demands, elections and other communications desired or required to be delivered or given under this Lease shall be in writing, and shall be deemed to have been delivered and given when delivered by hand, or on the third business day after the same have been mailed by first class registered or certified mail, return receipt requested, postage prepaid, enclosed in a securely sealed envelope addressed to the party to which the same is to be delivered or given at such party's address as set forth in this Lease or at such other address as said party shall have designated in writing in accordance with this Article 38.

### 39.    The Pastor's Study

Lessor is a church, and its Pastor's study may be accessed by a stairway, the lower terminus of which is behind a door that opens onto the lobby of the Demised Premises. The parties acknowledge that student security is a high priority, and within the framework of that constraint, the parties agree to give the Pastor and the person designated as his secretary free access to said study using the aforementioned stairway when the school is in session. The parties shall share equally the cost of the purchase and installation of a combination lock whose combination may be changed from time to time for security purposes by the Pastor. Lessee shall be free to purchase and install a lock on said door which it may keep locked during hours when the school is in session so that the door may not be opened from the side of the door at the terminus of the aforesaid stairway. The Pastor and his secretary may have free access to and from the Pastor's study from the lobby of the Demised Premises while the school is in session, but the Lessee may keep that door locked when the school is not in session, and there are no

25

school personnel in the lobby for security purposes, as there would normally be during school hours.

### 40.  **Miscellaneous**

All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable law, and are intended to be limited to the extent necessary so that they will not render this Lease invalid, unenforceable or not entitled to be recorded under any applicable law. If any term, covenant or condition of this Lease shall be held to be invalid, illegal or unenforceable, the validity of the other terms, covenants and conditions of this Lease shall in no way be affected thereby. If any interest provided for herein shall be deemed to be in excess of the maximum amount permitted under applicable law, Lessee shall be deemed to be entitled to the maximum amount permitted under applicable law.

Lessee represents that: (i) Lessee is not listed on the Special Designated National and Blocked Persons List maintained by the Office of Foreign Asset Control (the "OFAC") pursuant to Executive Order No. 13224, 66 Fed. Reg. 49079 (the "Order"); (ii) Lessee is not on any other list of terrorists or terrorist organizations maintained pursuant to the Order, the rules and regulations of OFAC, or any other applicable requirements contained in any enabling legislation or other Executive Orders in respect of the Order; and (iii) Lessee has not been convicted, pleaded nolo contendere, indicted, arraigned or custodially detained on charges involving money laundering or predicate crimes to money laundering.

The headings in this Lease are for purposes of reference only and shall not limit or define the meaning hereof. This Lease may be executed in any number of counterparts, each of which is an original, but all of which shall constitute one instrument. Neither this Lease, nor any memorandum thereof, shall be recorded by Lessee without the prior written consent of Lessor.

This Lease may be changed or modified only by an instrument in writing signed by the party against which enforcement of such change or modification is sought.

This Lease shall be governed by and construed in accordance with the laws of the State of New York.

Subject to Articles 29 and 32, this Lease shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto.

26

**IN WITNESS WHEREOF**, Lessor and Lessee have executed this Lease on the date first above written.

WALKER MEMORIAL BAPTIST CHURCH

By _____

ROSALYN YALOW CHARTER SCHOOL

By _____

Exhibit A

Gym











